IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NATALIE ROGERS HINTON,            :
                                  :
    Plaintiff,                    :
                                  :
vs.                               :
                                  :  CIVIL ACTION 13-0418-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
    Defendant.                    :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 15). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16). Oral argument was heard on March 24, 2014. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-eight years old, had completed a high school education (*see* Tr. 30), and had previous work experience as a police officer with the canine unit (Tr. 208). In claiming benefits, Plaintiff alleges disability due to degenerative disc disease, depression, myofascial pain syndrome, and restless leg syndrome (Doc. 15 Fact Sheet).

The Plaintiff filed protective applications for disability insurance and SSI on November 4, 2010 (Tr. 168-82; *see* Tr. 21). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not return to her past relevant work, Hinton was capable of performing specific light work jobs (Tr. 21-31). Plaintiff requested review of the hearing decision (Tr. 15-16) by the Appeals Council, but it was denied (Tr. 1-5).

2

Hinton claims that the ALJ's opinion is not supported by substantial evidence. Specifically, she alleges that: (1) The ALJ improperly determined that her mental impairment was not severe; (2) the ALJ's residual functional capacity (hereinafter *RFC*) determination is not supported by the evidence; and (3) the ALJ should have ordered a consultative examination (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 17). The relevant evidence of record follows.

On August 11, 2003, records from Providence Hospital show that Plaintiff underwent a lumbar hemilaminotomy/foraminotomy at L5-S1 for herniation on the right (Tr. 360-69). On December 22, 2003, a second such surgery was conducted for L4-5 herniation on the right (Tr. 351-59).[1]

Hinton underwent seventeen physical therapy treatments, spanning March 8 through June 4, 2008 for back pain (Tr. 243-47). On the initial visit, Plaintiff rated her lower back pain as two on a scale of ten and was worse with sitting or bending; she reported no pain in her upper back (Tr. 243). The therapist noted weak hip extensors and that Hinton demonstrated poor abdominal and gluteal recruitment; she had severe tenderness to palpation of the sacrococcygeal region and thoracic spine. Over time, the therapist noted benefits from traction and manual

---

[1]Though these surgeries predate Hinton's asserted disability date of February 28, 2008 by more than four years, the Court included them in this summary to lay the foundation for her claim of back pain.

3

therapy; endurance had improved. In the last treatment note, the therapist noted that Hinton reported that her pain had increased a lot since the previous session; she further noted that Plaintiff had responded well with use of the TENS unit and pelvic traction.

Treatment records from Coastal Neurological Institute show that Plaintiff underwent nerve conduction studies in early 2008 on the bilateral lower extremities; all tests were within normal limits (Tr. 299; *see generally* Tr. 284-319). On April 9, 2008, it was noted that Plaintiff had shown great improvement in her upper back, neck, and hand as far as burning and pain following her four weeks of physical therapy; she rated her current pain as three on a ten-point scale (Tr. 293-96). Her gait was normal; strength was full throughout. Inspection of the lumbar spine was noted to be normal; though back pain was considered to be unchanged, myofascial pain syndrome and muscle spasms were improved. Skelaxin[2] was prescribed. On May 15, Hinton rated her pain as four of ten; she had abnormal trigger points in both the cervical and lumbosacral spine but full strength in all extremities (Tr. 289-92). On July 11, Hinton stated that her prescription medication Requip had made the pain in her neck

---

[2] **Error! Main Document Only.** *Skelaxin* is used "as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 830 (52nd ed. 1998).

"tremendously better;" she rated her pain as only two (Tr. 287; *see generally* Tr. 284-88). The doctor noted that cervical range of motion reproduced mild pain on forward flexion, extension, and lateral bending; she had multiple palpable trigger points in the bilateral trapezius muscles, paraspinous muscles, and rhomboid though Plaintiff reported it had greatly improved since the last visit. There was also some mild palpable tenderness in the paraspinous muscles of the lumbar spine; the Skelaxin and Zanaflex were discontinued.

On March 3, 2010, Hinton went to Providence Hospital Emergency Room for complaints of chest pain and palpitations (Tr. 321-31). An EKG showed nonspecific T wave abnormality and possible left atrial enlargement.

On March 3, 2010, Family Practitioner Michael C. Madden examined Plaintiff for back pain; he noted tenderness and referred her to another doctor, Dr. Hall, for treatment (Tr. 249). On November 17, 2010, Madden noted lumbar tenderness; x-rays showed no fractures or dislocations (Tr. 250). Straight leg raises were negative bilaterally; the doctor prescribed Zanaflax,[3] Flextra,[4] and Requip.[5]

---

[3] **Error! Main Document Only.***Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

[4] **Error! Main Document Only.***Flextra DS* combines acetaminophen and phenyltoloxamine to treat aches and pains. It can cause dizziness or drowsiness. *See* http://www.drugs.com/mtm/flextra-ds.html

5

On March 29, 2010, Dr. Charles E. Hall, an Orthopaedic, examined Hinton for complaints of leg and low back pain (Tr. 406). On examination, the doctor noted that the upper extremity examination was unremarkable; the lower extremity examination revealed no definite motor deficits though there was some decreased segmental motion in the lumbar spine. No upper motor neuron signs were noted; reflexes were equal with sensation intact from L3-S1. Straight leg was equivocal. Dr. Hall stated that he needed more information to complete his assessment.

On February 8, 2011, Dr. Kathryn Cunningham, after reviewing the medical evidence of record as of that date, completed a physical RFC assessment indicating that Hinton was capable of lifting and carrying up to twenty pounds occasionally and ten pounds frequently (Tr. 253-60). She would be capable of sitting, standing, and/or walking for six hours during an eight-hour day and would have be limited in performing pushing and pulling movement with her legs because of her back pain. Cunningham found that Hinton would be able to climb, stoop, and crouch occasionally and balance, kneel, and crawl frequently.

On March 15, 2011, Psychologist John W. Davis examined Hinton and noted some anxiety and depression, though he found

---

[5]*Requip* is used in the treatment of the symptoms of Parkinson's Disease and Restless Leg Syndrome. **Error! Main Document Only.***Physician's Desk Reference* 1300-08 (66th ed. 2012).

her to have the capacity for a full range of emotional qualities (Tr. 261-65). Davis found Plaintiff oriented in three spheres with no loose associations, tangential or circumstantial thinking, or confusion. Judgment and insight were good. The Psychologist's impression was that Hinton had depression secondary to her general medical condition; her prognosis was guarded and correlated with her physical health. Davis indicated that her ability to understand, remember, carry out, and make judgments on simple work-related decisions was mildly impaired; her ability to understand, remember, carry out and make judgment on complex work-related decisions was moderately impaired. The Psychologist further found that Plaintiff would be moderately impaired in her ability to interact appropriately with the public, supervisors, and co-workers and to respond appropriately to usual work situation and changes in that setting. Finally, Davis specifically noted that Hinton's mental capacity "should be considered as an add-on factor but in and of itself [] not disabling" (Tr. 265).

On March 17, 2011, Psychologist Ellen N. Eno, after reviewing the medical evidence of record as of that date, completed a psychiatric review assessment indicating that Hinton had an affective disorder characterized as depression secondary to a general medical condition (Tr. 266-79). The Psychologist indicated that Plaintiff would have mild limitations in her

daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Eno went on to complete a mental RFC assessment in which she found that Hinton would be moderately limited in her ability to carry out detailed instructions, and maintain attention and concentration for extended periods (Tr. 280-83).

This concludes the relevant evidence of record.

In bringing this action, Plaintiff has first asserted that the ALJ improperly determined that her mental impairment was not severe (Doc. 15, pp. 2-4). In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2013).[6] The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely

---

[6]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

8

medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

In his determination, the ALJ found that Hinton's "mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere" (Tr. 24). The ALJ noted that Plaintiff had testified that she had never received any mental health counseling or been prescribed any depression medication, concluding that "her disability is not predicated on any mental impairment" (*id.*). Going through the analysis, the ALJ found that Plaintiff had only mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace, and had never experienced any episodes of decompensation (Tr. 24-25). In reaching these limitations conclusions, the ALJ pointed to Plaintiff's own testimony as well as the observations of Psychologist Davis.

The Court finds that the ALJ's conclusion is supported by substantial evidence. Though Plaintiff has directed the Court's attention to Davis's finding that she had some moderate limitations in her ability to perform complex tasks and in her

9

interactions with others, the Court finds that this does not equal the regulations requirement that she be "significantly limited" because of her impairment. This claim is of no merit.

Hinton next claims that the ALJ's RFC determination is not supported by the evidence (Doc. 15, pp. 4-6). She specifically asserts that the ALJ had no evidence on which he based his decision other than his personal viewing of her at the hearing.

The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). That decision can not be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that a claimant is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3).

In reaching the RFC determination, the ALJ discounted Hinton's testimony regarding her pain and limitations, pointing out that medical evidence did not support her claims (Tr. 27-28).[7] The ALJ, in determining Plaintiff's RFC and finding her testimony not credible, pointed to her activities of daily living (Tr. 29); these activities belie Hinton's claim that she

---

[7]Though Plaintiff notes in her brief that the ALJ discounted her testimony (Doc. 15, pp. 5, 8), she does not specifically raise the claim here that it was improper even though it had been raised in arguments before the Appeals Council (*see* Tr. 235-36, 237-38). In the event the Court is mistaken in finding that Hinton has not raised this claim herein, the Court finds that the ALJ's determination in this matter is well-stated and supported by substantial evidence.

10

cannot work. Finally, the ALJ gave some weight to the conclusions of the non-examining physician, Dr. Cunningham, though not full weight as he found Hinton more physically limited than Cunningham had (Tr. 29). This acknowledgement of Cunningham's conclusions provides evidence that his RFC conclusion was not created in a vacuum. The Court notes that while the ALJ did note Plaintiff's standing at the hearing after sitting for a period of time, this did not amount to "sit and squirm" jurisprudence as there was other evidence on which he based his decision. The Court finds substantial support for the ALJ's determination of Hinton's RFC.

Plaintiff's final claim is that the ALJ should have ordered a consultative examination. More specifically, Hinton suggests that the ALJ should have solicited more information regarding her back impairments. (Doc. 15, pp. 7-8). The Court notes that the Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court notes that Plaintiff was examined by Orthopaedist Hall on March 29, 2010 for her back pain. Hall indicated that he needed more information to make his assessment, including an MRI (Tr. 406). The Court further notes that the ALJ's decision was not entered for more than two years after Hall's exam, yet

no further medical evidence from Dr. Hall—or any other treating physician, for that matter—was provided by Hinton for consideration. While acknowledging that there is very little medical evidence in this record, Plaintiff is reminded that she is ultimately responsible for providing evidence to demonstrate that she is disabled. This claim is of no merit.

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED.** Judgment will be entered by separate Order.

DONE this 26th day of March, 2014.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE